IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AARON A. PIXLEY,                                    3:12-cv-00877-MA

                Plaintiff,                OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

LINDA S. ZISKIN
Ziskin Law Office
P.O. Box 753833
Las Vegas, Nevada 89136

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

BENJAMIN J. GROEBNER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-1075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Aaron A. Pixley, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) disability benefits under Title XVI of the Social Security Act (the Act). See 42 U.S.C. §§ 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on August 30, 2005 alleging disability due to "[m]uscular dystrophy, cardiomyopathy, [attention deficit disorder], depression, sleep apnea, obesity." Tr. 251-52. The claim was denied initially and upon reconsideration. After a hearing, a prior ALJ issued a decision on December 3, 2008, denying plaintiff's claim. Tr. 113-22. On November 2, 2010, the Appeals Council vacated the decision and remanded for further proceedings. Tr. 126-28. A second hearing was held by a different ALJ on February 7, 2011, at which plaintiff was represented by counsel and testified. In addition, plaintiff's vocational rehabilitation counselor, Donna Ray Luckett, and mother, Melody Ann Pixley, testified on plaintiff's behalf.

Vocational Expert (VE) Gary Jesky was present throughout the hearing and testified.

On February 16, 2011, the ALJ issued a decision once again denying plaintiff's application.    The Appeals Council declined review, and plaintiff timely appealed.

### FACTUAL BACKGROUND

Born on April 9, 1984, plaintiff was 21 years old on the date of the application and 26 years old on the date of the hearing. Plaintiff has a bachelor's degree in English and no past relevant work.

Plaintiff alleges his conditions became disabling on his date of birth, April 9, 1984.    In addition to his hearing testimony, plaintiff submitted an Adult Function Report, Fatigue Questionnaire, and Pain Questionnaire. Tr. 224-31, 232-35, 236-38. In addition to her hearing testimony, plaintiff's mother submitted a Third Party Function Report.    Tr. 263-70.    Plaintiff's father, David Pixley, also submitted a letter.    Tr. 379-80.

As relevant to this case, plaintiff's treating psychologist, Jay Edwards, Ph.D., submitted two opinions that assigned functional limitations, one dated October 18, 2007, and the other dated September 30, 2008. Tr. 641-44, 646-50.  In addition, Anita Katz, PMHNP, plaintiff's treating psychiatric mental health nurse practitioner, submitted an opinion. Tr. 552-55. Ronald D. Duvall, Ph.D., examined plaintiff and submitted an evaluative opinion.  Tr.

652-61.  Finally, the record contains one page of a four-page opinion by Dr. Luahra Ude, Ph.D.  Tr. 667.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v).  Each step is potentially dispositive.  The claimant bears the burden of proof at Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141–42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the application date, August 30, 2005.  See 20 C.F.R. §§ 416.971 et seq.; Tr. 18.

At Step Two, the ALJ determined that plaintiff's Becker muscular dystrophy; "Asperger's disorder vs. an anxiety disorder;" cardiomyopathy; obesity; obstructive sleep apnea; depression; an avoidant personality disorder; and an obsessive-compulsive personality disorder are severe impairments.  See 20 C.F.R. § 416.920(c); Tr. 19–20.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically

Case 3:12-cv-00877-MA    Document 23    Filed 08/26/13    Page 5 of 18

equal any listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 21-22.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work, including limitations that plaintiff can only lift and carry 20 pounds occasionally and 10 pounds frequently; can stand, walk, or sit at least six hours in an eight-hour day; can only climb, balance, or stoop occasionally; cannot work in a hazardous environment; and can have no more than occasional interaction with the public. The ALJ additionally limited plaintiff to unskilled or low semi-skilled work. Finally, the ALJ noted that plaintiff works best alone, and not as part of a team. Tr. 22-28.

At Step Four, the ALJ found that plaintiff has no past relevant work. See 20 C.F.R. § 416.965; Tr. 28.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Janitorial Worker (light) and Small Product Assembler. See 20 C.F.R. §§ 416.969, 416.969(a); Tr. 29.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises five arguments on appeal. First, plaintiff alleges the ALJ failed to follow the instructions contained in the Appeals Council's remand order. Second, plaintiff asserts that the

5 - OPINION AND ORDER

ALJ improperly rejected the opinion of Dr. Edwards.  Third, plaintiff argues that the ALJ improperly rejected the opinion of Dr. Ude.  Fourth, plaintiff maintains that the ALJ improperly rejected the opinion of Ms. Katz.  Finally, plaintiff asserts that the ALJ improperly rejected the testimony of plaintiff's vocational rehabilitation counselor, Ms. Lockett.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

///

## DISCUSSION

### I.  Compliance with the Appeals Council Order

Plaintiff first argues that the ALJ failed to follow the Appeals Council's remand order.  The Appeals Council ordered the ALJ to: 1) Evaluate Dr. Edwards' 2008 opinion; 2) Further evaluate plaintiff's subjective complaints; 3) Evaluate plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 416.920a and document the evaluation accordingly; 4) Further evaluate plaintiff's residual functional capacity (RFC) in light of the medical source opinions; 5) Obtain, if necessary, "evidence" from a medical expert; and 6) If warranted, obtain additional vocational expert testimony.  Tr. 126-27.  Plaintiff specifically argues that the ALJ failed to consider Dr. Edwards' opinion, failed to obtain evidence from a medical expert, and erroneously relied on some of the prior ALJ's findings. Plaintiff's arguments are without merit.

The ALJ clearly considered Dr. Edwards' 2008 opinion.  The ALJ's opinion contains nearly a page of discussion of Dr. Edwards' opinions, much of which focuses on the 2008 opinion.[1]  Tr. 26.  The Appeals Council did not order the ALJ to ascribe any particular weight to Dr. Edwards' opinion, but rather instructed the 2011 ALJ

---

[1] To the extent plaintiff argues the ALJ cited inadequate reasons to discredit Dr. Edwards opinions, that argument is addressed below.

to consider the 2008 opinion.  The ALJ plainly complied with that instruction.  The ALJ also clearly obtained additional evidence from a medical expert, as the 2011 ALJ obtained an evaluation and report from Dr. Duvall.  Tr. 651-61.  Obtaining this evaluation also clearly satisfies the Appeals Council's mandate.  Finally, the simple fact that the 2011 ALJ made some of the same findings and reached some of the same conclusions, even if in the same terms, as the 2008 ALJ does not establish that the 2011 ALJ failed to follow the Appeals Council's remand order.  I conclude that the 2011 ALJ sufficiently complied with the remand order.

## II.  Consideration of Medical Testimony

Plaintiff next argues that the ALJ erred in his consideration of the medical testimony by improperly rejecting the opinions of Drs. Edwards and Ude.  The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record.  Id.  "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin.,

554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

### A.    Dr. Edwards

The record contains three opinions from Dr. Edwards. After a July 19, 2006 evaluation, Dr. Edwards, plaintiff's treating psychologist, diagnosed plaintiff with Nonverbal Learning Disabilities and Asperger Syndrome. Tr. 469. Dr. Edwards did not directly ascribe any functional limitations to plaintiff at that time, but did describe some characteristics of plaintiff's diagnoses, and made recommendations for plaintiff's performance in school. Tr. 469-70.

On October 18, 2007, Dr. Edwards submitted an opinion as to plaintiff's functional limitations. Dr. Edwards checked that plaintiff's abilities in skills required for unskilled work were largely "good" with only "fair" abilities to work in coordination with, or proximity to others, make simple work-related decisions, perform at a consistent pace, and deal with normal work stress.

Tr. 641-42.   Dr. Edwards explained that plaintiff's "Asperger Disorder . . . negatively affects spontaneous peer interactions and the ability to respond efficiently in stressful conditions," and that his muscular dystrophy "negatively affects his stamina and motor speed skills." Tr. 642. With respect to semi-skilled and skilled work, Dr. Edwards opined that plaintiff had only "fair" abilities with respect to those requirements.    Tr. 643.    Dr. Edwards noted, however, that plaintiff's abilities to interact with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation were also "good," while his ability to adhere to travel in unfamiliar places was only "fair" because he has "difficulty spontaneously adapting to change." Id. Dr. Edwards also noted that "motor incoordination and speed of processing are also areas of weakness." Tr. 644.

Finally, on September 30, 2008, Dr. Edwards conducted another evaluation and submitted another opinion.  He noted that plaintiff generally fell in the average range of intelligence and the working memory index, but found that plaintiff had a relative weakness in processing speed. Tr. 648. Thus, Dr. Edwards noted that "[t]imed tasks, especially those that require visual scanning and copying will slow [plaintiff's] performance." Id. Based on an interview with plaintiff's mother, Dr. Edwards found that plaintiff's Adaptive Behavior Composite scores were "typical of individuals

functioning in the range of mild mental retardation," and noted
that plaintiff functions "at a level more typical of an early
teenager." Tr. 650. Thus, Dr. Edwards concluded that plaintiff
"will require supervision and support in order to continue to
develop age appropriate independent living skills." Id.

The ALJ discredited Dr. Edwards' opinion because it was vague
and inconsistent with the record as a whole. Specifically, the ALJ
noted that Dr. Edwards' opinion that plaintiff was significantly
limited in his activities of daily living was inconsistent with
other evidence of plaintiff's activities, and relied on an
interview with plaintiff's mother that contradicted her Third Party
Function Report. Tr. 26. Because much of Dr. Edwards' opinion was
contradicted by that of Dr. Duvall, the ALJ was required to cite
specific and legitimate reasons for rejecting Dr. Edwards' opinion.
Lester, 81 F.3d at 830-31. I conclude that the ALJ did so.

The ALJ reasonably cited inconsistency with plaintiff's level
of daily activity as a reason to discredit Dr. Edwards' opinion.
As the ALJ noted, plaintiff earned an approximately 3.0 grade point
average in college and worked part-time during that period. Tr.
57-58, 82-84, 87. The ALJ reasonably found this inconsistent with
Dr. Edwards' finding that plaintiff has "glaring deficits in
independent living skills such as time and money management,
hygiene and self-care, [and] social and communication skills." Tr.
650. In addition, plaintiff admitted in his Adult Function Report

that he has no problem with personal care, including hygiene and feeding himself. Tr. 225. Plaintiff represented that he prepares his lunch every day, and makes easily prepared meals. Tr. 226. Moreover, plaintiff reported that he does his laundry, changes sheets, cleans the house, vacuums, and performs household repairs. Id. Plaintiff also represented that he is able to pay bills, count change, handle a savings account, and use a checkbook and money orders. Tr. 227. The ALJ reasonably discredited Dr. Edwards' opinion because his conclusions were inconsistent with plaintiff's admitted activities of daily living.

The ALJ also properly discredited Dr. Edwards' opinion because the most limiting portion of it was based on an unreliable interview with plaintiff's mother. Indeed, the portion of Dr. Edwards' exam that assessed plaintiff's "Adaptive Functioning" was based on an interview with plaintiff's mother. Tr. 648. This portion of the evaluation is the only portion in which plaintiff's functional limitations were significant. Tr. 647-50. The "glaring deficits" found by Dr. Edwards in this section based on the interview with plaintiff's mother, however, are in stark contrast to her Third Party Function Report, in which she reported that he has no problems with personal care, prepares breakfast and lunch on a daily basis, performs house and yard work, and can take care of his finances. Tr. 264-66. The ALJ reasonably discredited Dr. Edwards' opinion because it was based on an interview with

plaintiff's mother that was inconsistent with Ms. Pixley's previous statements.

Finally, the ALJ also noted that Dr. Edwards' 2007 opinion found that plaintiff had generally "good" capacity to perform unskilled work and "fair" capacity to perform semiskilled or skilled work. Tr. 26. Indeed, the RFC is largely consistent with these findings, as it limits plaintiff to "unskilled to low semi-skilled work." Tr. 22. Thus, the extent to which the ALJ rejected Dr. Edwards' opinion was limited to the portion that he most thoroughly discussed. The ALJ properly weighed Dr. Edwards' opinions.

**B.    Dr. Ude's Opinion**

Plaintiff argues that the ALJ erred in rejecting Dr. Ude's opinion. There is only one page in the record from Dr. Ude, entitled "Psychological Review," in which Dr. Ude opined that plaintiff has a number of social limitations, sensory sensitivities, slowed processing speed, poor visual-spatial organization abilities, and is slow to adapt to change. Tr. 667. The ALJ rejected Dr. Ude's opinion because only one of four pages were present in the record, making the context in which she made her assessment unclear, and because her opinion was inconsistent with plaintiff's daily activities and the record as a whole. Tr. 27.

13 - OPINION AND ORDER

Plaintiff argues, however, that the ALJ erred in discrediting Dr. Ude's opinion because the partial opinion triggered the ALJ's duty to develop the record.  I agree.  In social security cases, the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  The duty to develop the record is triggered where the record contains ambiguous evidence or the ALJ finds the record is inadequate to allow for a proper evaluation of the evidence.  Id.  Here, as the ALJ's rejection of Dr. Ude's opinion strongly suggests, the record was inadequate to properly evaluate her opinion because "it is not clear in what context she made her assessment."  Tr. 27.  The ALJ erred in not attempting to re-contact Dr. Ude to obtain a complete opinion.  See Tonapetyan, 242 F.3d at 1150 (explaining that the ALJ can discharge the duty by making inquiries of, or subpoenaing the opining physician).

III. **Consideration of Other Testimony**

A.   **Ms. Luckett**

Plaintiff next argues that the ALJ erroneously rejected the testimony of Donna Ray Luckett, plaintiff's vocational rehabilitation counselor.  Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account.  Molina v.

<u>Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012).    To discount lay witness testimony, the ALJ must give reasons that are germane to the witness.    <u>Id.</u>

At the hearing, Ms. Luckett testified that she placed plaintiff in a job doing light production packaging, but that plaintiff was unable to perform the physical demands of the job because he is unable to multitask in a fast-paced work environment. Tr. 57.    Ms. Luckett opined that plaintiff does not have the physical or emotional stability to handle full-time work.    Tr. 58. Ms. Luckett further testified that plaintiff is limited in his fine manipulation motor skills.    Tr. 63.

The ALJ rejected Ms. Luckett's testimony because she is not qualified to assess plaintiff's medical impairments.    Tr. 28.    I conclude this is a germane reason to reject Ms. Luckett's testimony.    Indeed, much of Ms. Luckett's testimony was predicated on an understanding of plaintiff's medical diagnoses.    For example, Ms. Luckett testified that plaintiff "does have Asperger's and all of the personality issues and cognitive communication issues that go to play with someone who's a very high functioning Asperger's individual."    Tr. 57.    Additionally, Ms. Luckett testified that plaintiff's "fine manipulation motor skills are fairly limited.    He also has muscular dystrophy," which the ALJ rejected because there was no "evidence in this record that supports manipulative limits." Tr. 63.    The ALJ reasonably discredited Ms. Luckett's opinion

because, as a lay witness, her testimony was based in part on medical judgments.  I conclude the ALJ cited germane reasons to reject Ms. Luckett's testimony.

**B.  Ms. Katz's Opinion**

Anita Katz, a psychiatric mental health nurse practitioner who was one of plaintiff's treating mental health professionals, also submitted an opinion regarding plaintiff's mental limitations.  Tr. 552-55.  As a nurse practitioner, Ms. Katz is an "other source" whose opinion may only be rejected if the ALJ cites reasons germane to the witness.  See Molina, 674 F.3d at 1111.  Although the ALJ briefly summarized some of Ms. Katz's chart notes, he did not mention - or provide any reason for rejecting - Ms. Katz's opinion. This was clear error.  Because I cannot conclude what effect Ms. Katz's opinion would have on the ultimate disability determination, I cannot find that the ALJ's failure to address Ms. Katz's opinion was harmless error.

**IV.  Remand**

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

16 - OPINION AND ORDER

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." <u>Id.</u> The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1292). Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).

On this record, there remain outstanding issues to be resolved. The ALJ must attempt to obtain the full report from Dr. Ude, or seek clarification on the nature of the current report. Additionally, the ALJ must consider Ms. Katz's opinion. If the ALJ accepts either of the opinions, he must determine what effect the opinions have on the RFC, seeking additional VE testimony, if necessary. If the ALJ chooses to reject the opinions of Dr. Ude or Ms. Katz, he must provide legally sufficient reasons for doing so.

///

///

///

17 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _26_ day of August, 2013.

                                    _Malcolm F. Marsh_
                                    Malcolm F. Marsh
                                    United States District Judge